IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **TIMOTHY SCOTT BOSTROM,** | * |
| | * |
| Plaintiff, | * |
| | *   **Civil No. TMD 14-1771** |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| Defendant. | * |
| | *********** |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Timothy Scott Bostrom ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 13), Defendant's Motion for Summary Judgment (ECF No. 16), and Plaintiff's "Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment" (ECF No. 21).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1967, has an eleventh-grade education, and previously worked as a stone mason. R. at 217, 221. Plaintiff protectively filed an application for DIB on June 8, 2011, and for SSI on May 24, 2011, alleging disability beginning on May 7, 2011, due to partial paralysis due to stroke, shortness of breath, and speech impediment. R. at 23, 193-203, 217, 220. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 65-120, 127-42. On January 3, 2013, ALJ C.J. Sturek held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 37-64. On January 18, 2013, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of May 7, 2011, through the date of the decision. R. at 20-36. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on April 11, 2014. R. at 1-7. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 2, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.     **State Agency Medical Consultants**

On August 15, 2011, a state agency consultant, Paul Frye, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 72-74, 82-84. Dr. Frye opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) push and/or pull occasionally with the right upper extremity. R. at 72, 82. Plaintiff occasionally could balance and frequently could stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 73, 83. Although he had no visual, communicative, or environmental limitations, Plaintiff's reaching with the right upper extremity was limited in front, laterally, and overhead. R. at 73-74, 83-84.

On August 19, 2011, Wan Ahmad, Ph.D., also a state agency consultant, opined that Plaintiff had no established mental medically determinable impairments. R. at 71, 81.

On January 30, 2012, another state agency medical consultant, John Sadler, M.D., again assessed Plaintiff's physical RFC. R. at 95-98, 107-10. Dr. Sadler opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) push and/or pull occasionally with the right upper extremity. R. at 96, 108. Plaintiff occasionally could balance and crawl and frequently could stoop, kneel, crouch, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 96, 108. Although he had no visual or communicative limitations, Plaintiff's reaching with the right upper extremity was limited in front, laterally, and overhead. R. at 97, 109. His fingering or fine manipulation with

his left hand was limited because of difficulty extending the first through third digits. R. at 97, 109. Plaintiff was to avoid even moderate exposure to heights and hazards. R. at 97-98, 109-10.

**B.     Rick Parente, Ph.D.**

On November 18, 2011, Rick Parente, Ph.D., a licensed psychologist, evaluated Plaintiff "to assess his competencies and to make suggestions for training or placement." R. at 369; *see* R. at 369-87. The ALJ reviewed Dr. Parente's findings in his decision:

> Regarding [Plaintiff's] mental impairment, he was diagnosed in November 2011 as having a cognitive disorder [R. at 369]. He reported no trouble with communication or interpersonal skills. He took care of his personal needs [R. at 370]. On testing, his intellectual functioning was average, but he had mild to moderate memory problems [R. at 372, 373]. He was easily distracted, and had difficulty with planning, organizing, prioritizing, and functioning outside of a structured routine [R. at 376]. His functional levels were improving with physical therapy and occupational therapy [R. at 377].
>
> As for the opinion evidence, an examining psychologist, Dr. Rick Parente, stated on November 18, 2011, that [Plaintiff] may be able to work in an office setting, doing filing and sorting. He could possibly work doing telephone solicitation or sales. He may be able to learn certain computer skills, such as operating spreadsheets and, perhaps, learning to do bookkeeping and accounting. He might also be able to do other types of office-related tasks, so long as he could learn to use a voice-activated computer. Although he can no longer work as a stone mason, he may still be able to do inspection work on job sites [R. at 377].

R. at 29-30.

**C.     Hearing Testimony**

**1.     Plaintiff's Testimony**

The ALJ reviewed in his decision Plaintiff's allegations:

> [Plaintiff] alleges residuals of stroke – including left-sided weakness and muscle spasms and a cognitive disorder. He states that these impairments result in inability to use his left hand, shoulder pain, reduced strength and coordination for lifting and carrying, reduced tolerance for walking, lack of coordination on stair climbing, and being able to pay attention for only ½ to 1 hour [R. at 268-75].

4

R. at 28.  Plaintiff also testified that, although he prepared meals, he could not chop food.  R. at 53.  He testified that he cleaned a "little bit with anything [he] can do with [his] right hand."  R. at 53.  Plaintiff testified that he had difficulty unloading laundry from the washer because "everything is done one-handed" and everything he did took "two to three times, four times as long as it used to."  R. at 54.  He could not recall doing "any real shopping" since his stroke.  R. at 54.  He had problems dressing, bathing, and using a knife to cut food.  R. at 55.

    2.      **VE Testimony**

The VE testified that, if the ALJ credited Plaintiff's testimony as fully credible, there would be no full-time work that he could perform on the basis of Plaintiff's testimony regarding the use of his hands.  R. at 63.

### III

### Summary of ALJ's Decision

On January 18, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of May 7, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a surveillance monitor or laminating machine operator.  R. at 25-32.  The ALJ thus found that he was not disabled from May 7, 2011, through the date of the decision.  R. at 32.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except, using the non-dominant upper extremity, he can lift no more than 5 pounds

> frequently and 10 pounds occasionally. He has the ability to stand and walk 2 hours out of an 8 hour day, but 20 minutes at a time. The ability to sit would only be limited by the requirement that it be 2 hours at a time. There is a limitation with pushing or pulling with either upper extremity, as well as the left lower extremity, such that any force required above 10 pounds would preclude the activity. He could not perform work involving ladders, ropes, or scaffolds, as well as crawling. Other postural activities could be performed occasionally, including climbing stairs or ramps, balancing, bending or stooping, kneeling, and crouching or squatting. There would be a limitation with reaching overhead with either upper extremity no more than occasionally. With regard to other functions of the upper extremities, he lacks bimanual dexterity, and can only use the dominant arm and hand for most activities. He would have to avoid concentrated exposure to cold temperatures, vibration, and hazards such as moving machinery and unprotected heights. The combination of pain and fatigue would affect the ability to concentrate, maintain attention for periods, as well as keep up the pace. The cumulative effect is that productivity would be affected, but he could be productive more than 80% of the time.

R. at 27-28.

Regarding Plaintiff's credibility, the ALJ found that his medically determinable "impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible, for the reasons explained in this decision." R. at 28. The ALJ found:

> Several elements in the record call into question the credibility of [Plaintiff's] allegations. Even though [Plaintiff] does have limitations from his impairments, he still prepares simple meals, sometimes even complete meals, on a daily basis. He does laundry and light cleaning, goes outside daily, drives, shops in stores twice a week, and socializes on the phone and computer [R. at 268-75].

R. at 28.

The ALJ gave "some weight" to Dr. Parente's opinion "because it comes from an examining source, is supported by [Plaintiff's] left-sided impairments noted by the examiner, and takes into consideration [Plaintiff's] cognitive disorder in recommending potential jobs for occupation therapy training." R. at 30 (citing R. 369-75). The ALJ gave "some weight" to the opinions of Drs. Frye and Sadler because they were "supported by [Plaintiff's] left-sided

weakness and right shoulder MRI. However, they do not properly consider [Plaintiff's] left-sided wrist and hand difficulties from the stroke." R. at 30 (citations omitted). The ALJ gave Dr. Ahmad's opinion "little weight" because Dr. Parente found a cognitive disorder upon examination. R. at 30 (citing R. at 369, 375).

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[2]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[2] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erred in evaluating his mental impairment under Listing 12.02 in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02, because state agency consultants did not evaluate his mental impairment at the initial and reconsideration levels using the special psychiatric review technique in 20 C.F.R. §§ 404.1520a and 416.920a. Pl.'s Mem. Supp. Mot. Summ. J. 29-32, ECF No. 13-2. According to Plaintiff, although the ALJ applied the technique in his decision, "these findings were findings that needed to be made by medical professionals and then reviewed by the ALJ to see if the findings were supported by the evidence." *Id.* at 31.

"The regulations demand only that the technique be performed, not that a medical expert or psychologist perform it," however. *Kennedy v. Astrue*, No. 5:08-CV-11-FL, 2009 WL 605315, at *3 (E.D.N.C. Mar. 9, 2009); *see Green v. Colvin*, No. 1:10CV561, 2013 WL 3206114, at *7 (M.D.N.C. June 24, 2013) (determining that any error in Commissioner's failure to secure psychiatric review technique form at initial or reconsideration stages was harmless because ALJ applied special technique, which substantial evidence supported), *report and recommendation adopted*, No. 1:10-CV-561, 2013 WL 4811705 (M.D.N.C. Sept. 9, 2013). *But see Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010) ("[W]ithout any medical professional having rated [the claimant's] limitations in the areas of daily living, social functioning, and concentration, persistence, and pace, the ALJ assigned a rating of 'mild' in each category. In the absence of any expert foundation for these ratings, we cannot discern the necessary logical bridge from the evidence to the ALJ's conclusions."). Plaintiff's assertion in this regard thus is unavailing.

Plaintiff also maintains that substantial evidence does not support the ALJ's finding that he was not entirely credible. Pl.'s Mem. Supp. Mot. Summ. J. 32-34, ECF No. 13-2. The Fourth Circuit in *Mascio v. Colvin*, 780 F.3d 632, 639-40 (4th Cir. 2015), found that remand was required in light of an ALJ's lack of explanation concerning how the ALJ decided which of the claimant's statements to credit. *Mascio*, in other words, "requires the ALJ to articulate which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter." *Armani v. Comm'r, Soc. Sec. Admin.*, No. JMC-14-CV-976, 2015 WL 2062183, at *1 (D. Md. May 1, 2015).

Here, the ALJ found that, "[e]ven though [Plaintiff] does have limitations from his impairments, he still prepares simple meals, sometimes even complete meals, on a daily basis. He does laundry and light cleaning, goes outside daily, drives, shops in stores twice a week, and socializes on the phone and computer." R. at 28 (citing R. at 268-75). Plaintiff also reported on a function report, however, that he shopped for groceries twice a week for only 15 to 45 minutes at a time. R. at 271. He further reported that he had little to no use of his left hand. R. at 275. Plaintiff also testified at the hearing that, although he prepared meals, he could not chop and had difficulty using a knife to cut food. R. at 53, 55. The VE testified that, if Plaintiff's testimony regarding the use of his hands were accepted as fully credible, then there would be no full-time work that he could perform. R. at 63. "Nowhere, however, does the ALJ explain how he decided which of [Plaintiff's] statements to believe and which to discredit . . . ." *Mascio*, 780 F.3d at 640. "The ALJ cannot reject [the claimant's] undisputed description of his daily activities simply because he thinks it is implausible." *May v. Colvin*, No. 5:14CV00010, 2015 WL 1958948, at *14 (W.D. Va. May 1, 2015) (citing, *inter alia*, *Hines*, 453 F.3d at 566).

Moreover, as the ALJ noted, in October 2011, Plaintiff's medical records indicated that he had left wrist atrophy, his strength was 3 out of 5, and he had limited active range of motion. R. at 29 (citing R. at 441). The ALJ also noted that, in December 2012, Plaintiff had difficulty extending the first three digits of his left hand. R. at 29 (citing R. at 551). A court will not defer to an ALJ's credibility finding where "the record, when read as a whole, reveals no inconsistency between" a claimant's statements and other relevant evidence. *Hines*, 453 F.3d at 565. Because substantial evidence does not support the ALJ's assessment of Plaintiff's credibility, this matter is **REMANDED** for further proceedings under the fourth sentence of 42 U.S.C. § 405(g). The Court need not address Plaintiff's remaining arguments. *See Hardy v. Colvin*, Civil Action No. TMD 11-02793, 2013 WL 4478025, at *4 n.3 (D. Md. Aug. 19, 2013).

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**. Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order shall issue.

Date: September 29, 2015                        /s/
                                     Thomas M. DiGirolamo
                                     United States Magistrate Judge